# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| In Re:<br><br>All Terrain, LLC,<br><br>Debtors. | Bankruptcy Case<br>No. 17-40999-JMM |
|---|---|

## MEMORANDUM OF DECISION

**Appearances:**

Thomas D. Smith, Pocatello, Idaho, Attorney for Chapter 7 Trustee.

Hyrum D. Erickson, Attorney for Robert Edwards.

### *Introduction*

Before the Court is the chapter 7[1] Trustee's Objection to Claim No. 5. Dkt. No. 293. Creditor Robert Edwards ("Edwards") filed Claim Number 5 in this bankruptcy case. On December 16, 2019, the Trustee filed an objection to the claim, Dkt. No. 293, and subsequently filed an amended objection on March 9, 2020. Dkt. No. 307. An evidentiary hearing was set for June 23, 2020, and interested parties filed pre-trial

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.

MEMORANDUM OF DECISION − 1

memorandums in support of their positions. *See* Dkt. Nos. 330 and 331. The Trustee and Edwards thereafter entered a stipulation to resolve the claim by foregoing oral arguments and submitting written closing briefs, Dkt. No. 334, and this Court approved the procedure as stipulated. Dkt. No. 336. The parties were ordered to submit simultaneous closing and response briefs, Dkt. No. 339, and subsequently did so. *See* Dkt. Nos. 337, 340, and 342.

The Court has considered the stipulated facts and exhibits as well as the arguments put forth, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the objection. Rules 7052; 9014.

*Facts*

The parties stipulated to the following facts for the limited purpose of resolving Claim Number 5:

> a. Paul Hathaway ("Hathaway") was the sole owner and operator of both Hathaway Homes Group, LLC ("HHG") and the Debtor, All Terrain, LLC ("Debtor" [or "All Terrain"]).
> b. HHG breached its contract with Edwards by never ordering the mobile home for which he made the down payment of $50,000 and by not transferring $35,000 it was holding for Edward's benefit for the purchase of a lot on which the mobile home was to sit.
> c. Edwards is only one of many HHG customers who made down payments or deposits and did not receive the homes they contracted for.
> d. From 2015 to 2016, Hathaway spent millions of dollars gambling and some portion of that money came from his businesses, including HHG and the Debtor.
> e. Sometime after September 2017, Hathaway took money from both the Debtor and HHG and used it for gambling.
> f. Edwards did not enter into any type of contractual agreement with the Debtor or have any dealings with the Debtor.

MEMORANDUM OF DECISION − 2

Case 17-40999-JMM   Doc 351   Filed 09/24/20   Entered 09/24/20 14:46:53   Desc Main
Document      Page 3 of 15

      g. The the (sic) Court may take judicial notice of the existence of Hathaway's personal bankruptcy case, Case No. 17-40989-JMM, and HHG's bankruptcy case, Case No. 17-40992-JMM.

Dkt. No. 334. The parties also agreed to admit the following exhibits to resolve Claim Number 5:

      a. Contract between Edwards and HHG dated October 7, 2016 (Exhibit 1);
      b. Complaint and Demand for Jury Trial (Exhibit 2);
      c. Edwards's incurred attorney costs and fees (Exhibit 3); and
      d. Transcripts from meetings of creditors on January 5, 2018 (Exhibit 4).

*Id.*

### *Arguments*

      Edwards dealt exclusively with HHG but seeks to assert a claim in this case against All Terrain. Edwards argues that the distinction between HHG and All Terrain is arbitrary because Hathaway freely transferred funds between both entities, some of which he used to gamble, and because the "books" of each entity are unreliable. Because of Hathaway's actions, Edwards argues that he should be able to pierce the corporate veil of HHG in order to assert his claim against All Terrain in this case. The Trustee objects to this claim because Edwards contracted with HHG and not All Terrain. More specifically, the Trustee argues that a veil-piercing theory is inappropriate here because Edwards seeks to pierce HHG's corporate veil to get to All Terrain, rather than Hathaway as an individual, and that All Terrain does not stand behind HHG's corporate veil.

MEMORANDUM OF DECISION − 3

*Analysis and Disposition*

    1.    *Piercing the Corporate Veil*

"Generally, '[m]embers of an LLC are not liable for the misconduct of the company unless it is proven that the company is the alter ego of the member or manager.'" *Drug Testing Compliance Grp., LLC v. DOT Compliance Serv.*, 161 Idaho 93, 383 P.3d 1263, 1276 (2016) (quoting *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 329 P.3d 368, 376 (2014). This Court has recently held that a member or manager of an LLC is not shielded from liability for his own wrongful or tortious conduct. *See T Street LLC v. Jaques (In re Jaques)*, No. 18-01092-TLM, 2020 WL 1228668, at *13 (Bankr. D. Idaho Mar. 12, 2020). "Where a limited liability company shields its member(s) from liability, and equitable considerations compel a court to disregard that shield, creditors may also 'pierce the veil' of the LLC by establishing the LLC was the 'alter ego' of its member(s), and thereby impose personal liability on the otherwise protected member(s)." *Id*.

"The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager for a debt, obligation, or other liability of the company." Idaho Code § 30-25-304. Instead, in order to establish an alter ego exists, Edwards must prove "(1) a unity of interest and ownership to a degree that the separate personalities of [the individual and the corporation] no longer exist and (2) if the acts are

MEMORANDUM OF DECISION − 4

treated as acts of [the corporation] an inequitable result would follow." *Id.* at *14 (citing *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho at 594, 329 P.3d at 376.

This Court has previously rejected efforts to pierce the corporate veil to allow creditors to reach non-debtor entities. *See In re Wheeler*, 444 B.R. 598, 609 (Bankr. D. Idaho 2011) (concluding that, although the trustee attempted to pierce the corporate veil to reach the assets of a non-debtor entity controlled by the debtor, the trustee's approach was tantamount to a request for substantive consolidation); *In re Alpha & Omega Realty, Inc.*, 36 B.R. 416, 417 (Bankr. D. Idaho 1984) (questioning whether "nondebtor parties can essentially be declared involuntary debtors through use of a 'veil piercing' theory . . . ."). Those cases are not directly on point because, here, Edwards is attempting to reach the assets of an entity that is a debtor in a separate, but related, bankruptcy case.

The case before the Court presents a unique situation. Even though Edwards transacted in business exclusively with HHG, an LLC operated by Hathaway, Edwards is seeking to assert a claim in this case against All Terrain, another LLC operated by Hathaway, because of the way Hathaway conducted himself with respect to each enterprise. Thus, this situation does not present a classic veil-piercing case. Edwards is not seeking to pierce HHG's corporate veil to get to Hathaway, nor is he seeking to pierce All Terrain's corporate veil to get to Hathaway. Instead, he wants to assert a claim against All Terrain because of his contacts with HHG through Hathaway himself. Essentially, he asks this Court to view Hathaway, All Terrain, and HHG as a single business enterprise. The American Law Reports summarizes this legal theory as such:

MEMORANDUM OF DECISION − 5

> The single business enterprise theory has emerged as a controversial veil-piercing theory, with as many courts rejecting it as there are employing it, while a large majority of jurisdictions have not yet addressed it. In the jurisdictions that have adopted the theory, it serves as an adjunct to traditional alter ego doctrine, providing a means of imposing joint liability on multiple entities that are controlled by common ownership, for the wrongdoing of each individual entity, whereas alter-ego theories are designed to hold individual and corporate shareholders liable for corporate wrongdoing committed at their behest. Generally, the single business enterprise theory may be applied when it has been determined that commonly controlled companies have integrated their operations and resources to achieve a common business purpose, to an extent that their separate identities have essentially been merged into a single entity, such that disregarding their separate identity is necessary to avoid an unjust or inequitable result. A determination of whether those two elements have been satisfied generally requires a highly fact-intensive analysis, requiring courts to weigh profuse evidence and lengthy lists of factors that may or must be considered. While no set of factors is to be considered to be exhaustive, and no factor may be considered to be dispositive, common ownership and control is generally the common thread that is essentially prerequisite to any further consideration of liability.

50 A.L.R.7th Art. 2 (Originally published in 2020).

Numerous jurisdictions have declined to recognize the single enterprise theory. *See, e.g. Welch v. Regions Bank (In re Mongelluzzi)*, 587 B.R. 392, 406 (Bankr. M.D. Fla. 2018) ("Although recognized in other jurisdictions, the common enterprise doctrine has not been recognized by the Eleventh Circuit Court of Appeals. And [defendant] has not cited to an opinion of any court within this jurisdiction that has recognized the application of the common enterprise doctrine as a defense to fraudulent transfer claims."); *Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d 32, 42 (Miss. Ct. App. 2012) ("Mississippi has never adopted the "single business enterprise" theory to hold affiliated LLCs jointly liable for each other's debts."); *Michnovez v. Blair, LLC*, 795

MEMORANDUM OF DECISION − 6

F. Supp. 2d 177, 186 (D. N.H. 2011) ("Plaintiffs have identified no authority, and the court's research has identified none, for the proposition that New Hampshire would, if presented with the question, adopt a single-enterprise theory such as California's, under which an entity other than a the (sic) owner of a corporation could be held liable for that corporation's conduct by means of veil piercing."); *Mortimer v. McCool*, No. 3583 EDA 2018, 2019 WL 6769733, at *17 (Pa. Super. Ct. Dec. 12, 2019) ("Pennsylvania has repeatedly refused to adopt the 'enterprise entity' or 'single entity' theory of piercing the corporate veil.").

Other courts have recognized some sort of single enterprise theory. *See, e.g.*, *Haas Automation, Inc. v. Denny*, No. 2:12-CV-04779 CBM, 2013 WL 6502876, at *2 (C.D. Cal. Dec. 4, 2013) ("Under the single business enterprise theory, '[a] court may also disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation.'"); *On Command Video Corp. v. Roti*, 705 F.3d 267, 273 (7th Cir. 2013) ("[The single-enterprise theory] is a permissible form of piercing the veil . . . piercing to reach a sister company rather than a parent or other owner[.]"); *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 655, 817 S.E. 2d 273, 280 (South Carolina 2018), reh'g denied (Aug. 16, 2018)[2] ("We formally recognize today this single business

---

[2] The South Carolina Supreme Court found that fourteen states around the country recognize some sort of single business enterprise theory. *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. at 654, 817 S.E. 2d at

MEMORANDUM OF DECISION − 7

enterprise theory, and in doing so, we acknowledge that corporations are often formed for the purpose of shielding shareholders from individual liability; there is nothing remotely nefarious in doing that.").

Notably, the American Law Reports' database shows no Idaho case law analyzing the issue,[3] nor could this Court find any Idaho case law directly on point adopting the single enterprise theory.[4] However, Utah caselaw is instructive. Utah courts use the same two factors as Idaho courts to determine whether piercing the corporate veil is appropriate,[5] and at least one federal court refused to apply the single enterprise liability theory under Utah's corporate veil piercing laws. *See Cole v. Salt Creek, Inc.*, No. 2:08-CV-928 DN, 2012 WL 5331243, at *5 (D. Utah Oct. 29, 2012) ("[T]he 'single business enterprise' doctrine has been applied in only a handful of jurisdictions, including Texas and Louisiana, beyond which it appears to have no momentum. Given that Utah courts

---

280 (citing *The Bogalusa Explosion, "Single Business Enterprise," "Alter Ego," and Other Errors: Academics, Economics, Democracy, and Shareholder Limited Liability: Back Towards A Unitary "Abuse" Theory of Piercing the Corporate Veil*, 100 Nw. U. L. Rev. 405, 422–23 (2006)).

[3] For a list of courts that have adopted and declined to adopt the single enterprise theory, see 50 A.L.R.7th Art. 2 (Originally published in 2020).

[4] "[W]hen a decision turns on applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Elsaesser v. Raeon (In re Goldberg)*, 235 B.R. 476, 485 (Bankr. D. Idaho 1999) (quoting *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997)).

[5] "Under Utah law, corporate liability may be extended to shareholders of the corporation under the theory of alter ego if there is '(1) [s]uch a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter ego of one or more individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in inequality.'" *Cole v. Salt Creek, Inc.*, No. 2:08-CV-928 DN, 2012 WL 5331243, at *4 (D. Utah Oct. 29, 2012).

MEMORANDUM OF DECISION − 8

'are very reluctant to pierce the corporate veil,' the court cannot conclude that Utah would adopt the enterprise liability theory.").[6]

Idaho courts have expressed similar reluctance to pierce the corporate veil. *See Alpine Packing Co. v. H.H. Keim Co.*, 121 Idaho 762, 763, 828 P.2d 325, 326 (Ct. App. 1991) ("The powers of a court to disregard a corporate entity must be exercised cautiously.") (citing *Hayhurst v. Boyd*, 50 Idaho 752, 300 P. 895, 897 (1931) ("As a general rule, a corporation will be regarded as a legal entity, and the courts, acting cautiously and only when the circumstances justify it, will ignore the fiction of corporate entity . . . .") and *Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 387, 414 P.2d 879, 887 (1966) ("[A]s a general rule a corporation will be regarded as a legal entity and that the courts, acting cautiously and only where circumstances justify it, may disregard the fiction of the corporate entity.")).

The Idaho Supreme Court came close to the issue in *Wandering Trails*. In that case, plaintiffs brought suit against Big Bite Excavation, Inc. ("Big Bite"), Piper Ranch, LLC ("Piper Ranch"), and Tim and Julie Schelhorn (collectively the "Schelhorns").

---

[6] Louisiana courts will apply the single enterprise theory, holding that "when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for *wrongful acts done in pursuit of that purpose*." *Moore v. Smith*, No. 2:11-CV-1224, 2015 WL 4395321, at *4 (W.D. La. July 16, 2015) (emphasis added). Texas courts originally accepted the theory in *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App. 1986), but later rejected the theory in *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 454–56 (Tex. 2008) (*See Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d at 42 ("[T]he Supreme Court of Texas expressly abrogated this theory as 'fundamentally inconsistent' with the Texas Business Corporation Act.").

MEMORANDUM OF DECISION − 9

*Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho at 589, 329 P.3d at 371.

The Idaho Supreme Court summarized the parties' relationship:

> Big Bite and Piper Ranch are both wholly owned by the Schelhorns. Wandering Trails was created for the purposes of obtaining and developing certain property (the "Wandering Trails development"). Wandering Trails entered into an agreement with Piper Ranch under which Piper Ranch agreed to pave the roadways for the [Wandering Trails] development in exchange for a 25% interest in Wandering Trails. Piper Ranch did not do any work on the development. [Plaintiffs] brought suit and alleged an alter ego claim against Big Bite, Piper Ranch, and the Schelhorns.

*Id.* Plaintiffs claimed the Schelhorns were the alter ego of Piper Ranch. *Id.* Eventually, the plaintiffs sought leave to amend their complaint to include a veil-piercing claim against Big Bite. *Id.* at 596, 329 P.3d at 378. The district court held that a veil-piercing claim against Big Bite was inappropriate:

> Big Bite was not a party to the assignment agreement. Additionally, the district court ruled that there was no evidence to support a veil-piercing claim against Big Bite because Big Bite and Piper Ranch are not members, managers, or shareholders, of one another. The district court ruled that there was no evidence that Big Bite was behind the veil of Piper Ranch—only the Schelhorns against whom it permitted a veil-piercing claim.

*Id.* The Idaho Supreme Court agreed:

> There was no evidence supporting the contention that Big Bite was an entity that stood behind the Piper Ranch entity. Indeed all of the evidence demonstrates that it was the Schelhorns who exercised complete control and ownership of Piper Ranch. There is nothing showing that Big Bite was a member of Piper Ranch, was an owner of Piper Ranch, or had any equitable interest in Piper Ranch. . . . Also, the Plaintiffs seem to argue that they should be able to go after Big Bite because the Schelhorns own Big Bite as well. Effectively, the Plaintiffs argue that the Schelhorns are the alter ego of Big Bite and that Big Bite stands behind the veil of the Schelhorns. There is no veil to pierce in such a scenario. The Schelhorns as individuals have no legal status to disregard. The Plaintiffs' gripes against Big Bite relate to the Schelhorns. The Schelhorns were pursued with a veil-piercing

MEMORANDUM OF DECISION − 10

> claim. There is nothing providing that individuals can be the alter ego of a business entity, as Plaintiffs essentially contend.

*Id.* at 596–597, 329 P.3d at 378–379.

Edwards' argument here extends one step further. Edwards argues that the claim against All Terrain should be allowed because Hathaway freely moved money between his own accounts and the LLCs that he managed. He contends that this case differs from *Wandering Trails* because 1) unlike the Schelhorns in *Wandering Trails*, the Hathaways regularly took money to fund personal gambling and regularly transferred money between the two entities' accounts and 2) *Wandering Trails* was not affected by bankruptcy filings, as is the case here, and those separate bankruptcies are producing an inequitable result.

In *Wandering Trails*, the court analyzed whether Big Bite stood behind Piper Ranch. *Id.* ("[T]here was no evidence to support a veil-piercing claim against Big Bite because Big Bite and Piper Ranch are not members, managers, or shareholders, of one another. . . . There was no evidence supporting the contention that Big Bite was an entity that stood behind the Piper Ranch entity. . . . There is nothing showing that Big Bite was a member of Piper Ranch, was an owner of Piper Ranch, or had any equitable interest in Piper Ranch. . . ."). Thus, in deciding whether one entity stood behind the other, the Idaho Supreme Court applied traditional veil-piercing doctrine, and did not utilize any other legal theory.

Likewise, the facts of this case would require something different than a strict application of the traditional veil-piercing doctrine in order for Edwards to reach All

MEMORANDUM OF DECISION − 11

Terrain. Unlike in *Wandering Trails,* here there has been no assertion that All Terrain was behind HHG. Again, Edwards seeks to assert a claim against All Terrain through Hathaway's control of both entities. In other words, if HHG is an alter ego of Hathaway, and All Terrain is another alter ego of Hathaway, then, because of the way Hathaway conducted himself when exercising control over these two entities, one claimant against HHG should be able to reach All Terrain. *Wandering Trails* involved piercing the corporate veil of one LLC to make a claim against an alter ego LLC. Accordingly, while the *Wandering Trails* analysis is somewhat instructive, it is not on point given the facts presented here.

This Court recognizes the Idaho courts' reluctance to pierce the corporate veil, especially under these circumstances. Moreover, the single enterprise theory has not been widely adopted, with some courts rejecting the theory, including Utah, which shares the same veil-piercing factors, and the same reluctance to pierce it, as Idaho courts. Taking these factors together, this Court holds that the Idaho Supreme Court would not choose to adopt this alternative theory.

Furthermore, in the bankruptcy context, adoption of any such theory may be entirely unnecessary, as the bankruptcy courts already have a procedure in place that addresses this situation: substantive consolidation.[7] *See In re Bonham*, 229 F.3d 750, 764

---

[7] With its holding, this Court does not suggest that veil-piercing claims are never warranted in the bankruptcy context. This is a unique situation and veil-piercing claims should be analyzed appropriately under the specific facts of each case. Nor does this Court speculate on the applicability of substantive consolidation here.

MEMORANDUM OF DECISION − 12

(9th Cir. 2000) ("[Substantive consolidation] enable[es] a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation."); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 764 (Bankr. S.D. N.Y. 1992) ("The equitable doctrine of substantive consolidation permits a Court in a bankruptcy case involving one or more related corporate entities, in appropriate circumstances, to disregard the separate identity of corporate entities, and to consolidate and pool their assets and liabilities and treat them as though held and incurred by one entity.").

Both veil-piercing and substantive consolidation are equitable doctrines and utilize generally the same factors.[8] "While substantive consolidation includes a veil-piercing element, it is more than that." *In re Wheeler*, 444 B.R. at 609. At least one bankruptcy court has acknowledged that, in the bankruptcy context, substantive consolidation is replacing traditional veil-piercing doctrines:

---

[8] *Compare Wandering Trails, LLC v. Big Bite Excavation*, Inc., 156 Idaho at 594, 329 P.3d at 376 (holding that the following factors are relevant in determining whether there is a unity of interest in a veil-piercing situation: the level of control that the shareholder exercises over the corporation; the lack of corporate formalities; the failure to operate corporations separately; keeping separate books; and the decision-making process of the entity; and *In re Stevenson*, 153 B.R. 52, 53 (Bankr. D. Idaho 1993) (holding that the following factors are relevant in determining whether substantive consolidation is appropriate: the presence or absence of consolidated financial statements; the unity of interests and ownership between the various corporate entities; the existence of parent and inter-corporate guarantees on loans; the degree of difficulty in segregating and ascertaining individual assets and liability; the transfer of assets without formal observance of corporate formalities; the commingling of assets and business functions; the profitability of consolidation at a single physical location; and the difficulty in segregating and ascertaining individual assets and liability).

MEMORANDUM OF DECISION – 13

> [B]ankruptcy courts are replacing piercing-the-veil theory with a decisional rationale that examines equitable grounds for disregarding separate corporate existence.
>
> > A doctrine developed to protect limited liability in tort and contract cases involving substantive liability has little usefulness in other areas where different objectives and underlying policies are involved. In bankruptcy, equitable considerations govern. The guiding policies are equality of distribution and fairness to creditors. Although "piercing the veil" jurisprudence, notwithstanding its limited conceptual usefulness, in the past has played a prominent role in bankruptcy, the courts increasingly are relying on a different framework for decision. In bankruptcy, they are increasingly analyzing intragroup transactions and guaranties to determine whether recognizing or disregarding the separate existence of a constituent corporation of the group will best implement equitable objectives.
>
> . . .
>
> In bankruptcy this "disregarding the separate existence of a constituent corporation" is called substantive consolidation. This remedy eliminates inter-company liabilities and requires the general creditors of the separate entities to share in pooled assets.

*In re Circle Land & Cattle Corp.*, 213 B.R. 870, 874–75 (Bankr. D. Kan. 1997) (citing

PHILLIP I. BLUMBERG, THE LAW OF CORPORATE GROUPS, BANKRUPTCY LAW 8 (1985)).

/ / / / /

MEMORANDUM OF DECISION − 14

Based on the facts before the Court, substantively consolidating the cases at this time is inappropriate. No party has moved this Court to substantively consolidate the cases and the Court declines to take the matter up on its own.[9] Accordingly, Claim Number 5 will be disallowed.

A separate order will be entered.

DATED: September 24, 2020

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[9] In his brief, Edwards asks this Court, in the alternative to granting his veil-piercing claims, to substantively consolidate the related cases. In its entirety, Edwards' argument on the matter states:

> If necessary, the Court should substantively consolidate the cases in order to allow Edwards to reach the assets of All Terrain. *In re Wheeler*, 444 B.R. 598, 608–10 (Bankr. D. Idaho 2011). Both companies were alter egos of Paul Hathaway. A review of the facts as alleged by the Trustee demonstrates that there is no rationale reason why Edwards – or any other creditor -- should be limited to the assets of one company or the other.

Dkt. No. 340. Given the potential impact of substantive consolidation, as well as the due process requirements which must necessarily be met prior to its application, *In re Wheeler*, 444 B.R. at 609, the Court concludes the mere mention of substantive consolidation is not sufficient to properly bring the issue before the Court and it will not consider it at this juncture.

MEMORANDUM OF DECISION − 15